**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| **ALEX ARSENAULT, and LANA LEGUIA,**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**SHIRLEY EMEHELU, in her official Capacity as the Acting New Jersey Secretary of State**<br><br>**Defendant.** | : | **CIVIL ACTION**<br>**No.____________________**<br><br>***Filed Electronically*** |

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

1. Plaintiffs, ALEX ARSENAULT and LANA LEGUIA, by and through their undersigned legal counsel, file this civil rights action for prospective equitable relief against Defendant SHIRLEY EMEHELU and her successors in office, in her official capacity as the acting New Jersey Secretary of State, to enforce rights guaranteed to Plaintiffs under the First and Fourteenth Amendments to the United States Constitution. Plaintiffs request declaratory and injunctive relief to prevent Defendant's enforcement of N.J.S.A. 19:13-7, which prohibits out-of-state residents, such as Plaintiff Arsenault from circulating nominating petitions to collect the required number of signatures of registered New Jersey voters to be timely filed with Defendant Emehelu to place Plaintiff Leguia's name on New

Jersey's 2028 general election ballot as the Libertarian candidate for the Seventh Congressional District.

2. Plaintiff Leguia has announced that she is the 2028 Libertarian candidate for New Jersey's Seventh Congressional Dictrict.

3. Plaintiff Alex Arsenault, a professional petition circulator who resides in the Commonwealth of Massachusetts, has agreed to serve as Plaintiff Leguia's petition circulator for her ballot access petition drive for the 2028 general election as the Libertarian candidate for New Jersey's Seventh Congressional District.

4. N.J.S.A. 19:13-7, makes it illegal for Plaintiff Arsenault to collect any signatures for Plaintiff Leguia, and any signature collected by Plaintiff Arsenault for Plaintiff Leguia and filed with Defendant Emehelu is invalid.

5. This Court has already declared an identical blanket ban on the use of out-of-state petition circulators for Republican and Democratic candidates under N.J.S.A. 19:23-11, unconstitutional under the First and Fourteenth Amendments to the United States Constitution in *Arsenault v. Way*, 539 F.Supp.3d 335 (D.N.J. 2021).

6. The New Jersey legislature has had over 5-years to repeal and redraft N.J.S.A. 19:13-7 to conform it to the limitation imposed by the First and Fourteenth Amendments to the United States Constitution against blanket bans on

the use of out-of-state petition circulators articulated in *Arsenault v. Way* as not being narrowly tailored to advance a compelling governmental interest.

7. Despite a 5-year policy adopted by prior New Jersey Secretaries of State to voluntarily cease the enforcement of N.J.S.A. 19:13-7 following this Court's decision in *Arsenault v. Way* with respect to the identical blanket ban on the use of out-of-state petition circulators for Republican and Democratic nominating candidates under N.J.S.A. 19:23-11, the voluntary cessation of N.J.S.A. 19:13-7 was ineffective and Plaintiff Leguia was denied ballot access by New Jersey courts for the sole reason that she used out-of-state circulators to collect the majority of her ballot access petition signatures for the 2026 general election in violation of N.J.S.A. 19:13-7 which was not addressed by this Court in *Arsenault*, and, therefore, in full force and effect.

8. This case demonstrates why alleged voluntary cessation of the enforcement of statutory provisions in violation of the federal constitution is insufficient to protect rights afforded to the citizenry.

9. Plaintiffs bring this action to protect their rights in future New Jersey election cycles.

## NATURE OF THE COMPLAINT

10. This is a civil rights action brought pursuant to 42 U.S.C. § 1983, alleging, based on information and belief, that the requirement of N.J.S.A. 19:13-7,

requiring that a circulator of nominating petitions for candidates seeking direct access to New Jersey's General Election ballot, such as Libertarian and independent political candidates, must be a resident of the State of New Jersey impairs clearly established rights guaranteed to Plaintiffs under the First and Fourteenth Amendments to the United States Constitution.

11. Plaintiffs ask this court for declaratory relief that N.J.S.A. 19:13-7 is unconstitutional under the First and Fourteenth Amendments to the United States Constitution to the extent it imposes a blanket ban on the use of out-of-state petition circulators willing to submit to the jurisdiction of the State of New Jersey for the purpose of any investigation and/or prosecution of any alleged petition misconduct as a condition precedent to being able to lawfully and effectively assist in the collection of the required number of nominating petition signatures for political candidates seeking direct access to New Jersey's General Election ballot.

12. Plaintiffs also ask this court of injunctive relief to permit Plaintiff Leguia, and all similarly situated candidates, to employ the services of out-of-state petition circulators who are willing to submit to the jurisdiction of the State of New Jersey, such as Plaintiff Arsenault, as a condition precedent to being able to lawfully and effectively circulate nominating petitions to assist in the collection of the required number of valid signatures for candidates seeking direct access to New Jersey's General Election ballot.

## JURISDICTION

13. Jurisdiction lies in this Court under 28 U.S.C. § 1331, providing that district courts shall have original jurisdiction of all civil actions arising under the Constitution of the United States.

14. Moreover, jurisdiction lies under 42 U.S.C. § 1983 and 28 U.S.C. § 1343(a), the jurisdictional counterpart of 42 U.S.C. § 1983, as Plaintiffs allege violation of rights guaranteed to them under the First Amendment and the Equal Protection Clause, as applied to the states by the Fourteenth Amendment to the United States Constitution.

## VENUE

15. Venue is proper in the United States District Court for the District of New Jersey under 28 U.S.C. § 1391 as the Defendant exercises her authority in the entire State of New Jersey and maintains her principal office within this district.

## PARTIES

16. Plaintiff Leguia is a member of the Libertarian Party.

17. Plaintiff Leguia is a resident of New Jersey's Seventh Congressional District.

18. On or about September 25, 2026, Plaintiff Leguia announced, via press release, that she is a Libertarian candidate for New Jersey's Seventh Congressional District in the 2028 General Election.

19. To secure ballot access for the 2028 general election Plaintiff Leguia must collect and timely file, on nominating petitions promulgated by Defendant Emehelu, 500 valid signatures from registered New Jersey voters.

20. Plaintiff Leguia was denied ballot access for the same office in New Jersey's 2026 general election for the sole reason that a majority of the signatures collected on her 2026 nominating petitions were collected by non-residents of New Jersey in violation of N.J.S.A. 19:13-7.

21. In 2026, Plaintiff Leguia used out-of-state residents to assist in the circulation of her ballot access petitions relying on the New Jersey Secretary of State's public policy that, following *Arsenault v. Way*, the blanket ban on the use of out-of-state petition circulators imposed under N.J.S.A. 19:13-7 was also unconstitutional, and would voluntarily not be enforced.

22. New Jersey state court's reversed the New Jersey Secretary of State's determination and enforced N.J.S.A. 19:13-7 against Plaintiff Leguia, denying her access to the 2026 general election ballot.

23. Nothing in this Complaint seeks to reverse New Jersey's final decision to deny Plaintiff Leguia access on the 2026 general election ballot for the Seventh Congressional District. Instead, Plaintiffs seek prospective equitable relief for future elections.

24. On or about September 18, 2026, New Jersey printed and sent the mail-in ballots for the Seventh Congressional District without the name of Plaintiff Leguia on the ballot.

25. Accordingly, Plaintiff has suffered concrete past injury as a direct and proximate result of the continued enforcement of N.J.S.A. 19:13-7 and requires the requested relief to be able to properly plan for her upcoming petition drive to secure access to New Jersey's 2028 General Election ballot for the Seventh Congressional District.

26. Plaintiff Alex Arsenault is a professional circulator of ballot access petitions. Plaintiff Alex Arsenault collects valid petition signatures on ballot access petitions promulgated by relevant election authorities for the express purpose to permit qualified residents and/or voters to record their signature in support of placing the name of the listed political candidate on the jurisdiction's ballot. In all cases, the goal is to collect enough valid petition signatures to qualify the named political candidate for the jurisdiction's election ballot.

27. Plaintiff Arsenault has agreed to circulate ballot access petitions for Plaintiff Leguia for her bid to place her name on New Jersey's 2028 general election ballot for the Seventh Congressional District.

28. Plaintiff Arsenault supports broad ballot access for political candidates.

29. Plaintiff Arsenault's chosen profession permits him to associate with candidates he supports to help ensure that they appear on the ballot so that voters have a larger number of political candidates from which they can choose to support in an election contest.

30. On or about September 28, 2026, Plaintiff Arsenault agreed to circulate ballot access petitions for Plaintiff Leguia's drive to collect enough valid signatures of registered New Jersey voters to secure access to New Jersey's 2028 General Election ballot for the Seventh Congressional District.

31. Plaintiff Arsenault is a resident of the Commonwealth of Massachusetts.

32. As a non-resident of New Jersey, Plaintiff Arsenault is not permitted to circulate nominating petitions for political candidates seeking direct access to New Jersey's General Election ballot as a direct and proximate result of N.J.S.A. 19:13-7.

33. As a result of his successful litigation in *Arsenault v. Way*, Plaintiff Arsenault is permitted as a non-resident to circulate nominating petitions for Republican and Democratic political candidates seeking access to New Jersey's Primary Election ballot if he agrees to submit to the jurisdiction of the New Jersey for the investigation and/or prosecution of any alleged petition misconduct with

respect to any nominating petition circulated by him and filed with Defendant Emehelu.

34. As a condition precedent to being able to lawfully circulate and file nominating petitions governed by N.J.S.A. 19:13-7, Plaintiff Arsenault is willing to sign an affidavit and any other document promulgated by Defendant Emehelu in order to submit and consent to the jurisdiction of New Jersey for the purpose of any investigation and/or prosecution of any alleged petition misconduct with respect to any nominating petition circulated by him and filed with Defendant Emehelu for political candidates seeking direct access to New Jersey's General Election ballot.

35. Defendant Emehelu is the acting New Jersey Secretary of State. As New Jersey's current Secretary of State, Defendant Emehelu is the head of New Jersey's Division of Elections and serves as New Jersey's chief elections official charged with the enforcement of N.J.S.A. 19:13-7. Defendant Emehelu, and all successors in office, is sued in her official capacity only.

36. Defendant Emehelu's principal office is in Trenton, New Jersey.

## FACTS

37. Plaintiffs reassert each preceding allegation as if set forth fully herein.

38. The circulation of ballot access petitions is core political speech subject to the highest protections afforded under the First Amendment to the United States Constitution.

39 Any restriction on core political speech must be narrowly tailored to advance a compelling state interest.

40. In *Arsenault v. Way*, 539 F.Supp.3d 335 (D. N.J. 2021), this Court declared N.J.S.A. 19:23-11's blanket ban on non-resident petition circulators for Republican and Democratic candidates seeking access to New Jersey's Primary Election ballot unconstitutional as drafted as not being narrowly tailored to advance a compelling governmental interest.

41. Defendant Emehelu's predecessor, Secretary of State Caldwell, stated in his Final Opinion on the 2026 challenge to Plaintiff Leguia's 2026 nominating petition to appear as the Libertarian candidate for the Seventh Congressional District that:

> In the instant case, the rationale of *Arsenault* applies with equal, if not greater, force to the circulators of General Election petitions at issue in this matter. Where there are out-of-state petition circulators for a congressional candidate seeking to have her name placed on the General Election ballot, *Arsenault* court's rejection of the petition circulator residency requirement must also be applied to the residency restriction set forth at N.J.S.A. 19:13-7. Here, the two statutes pertinent requirements are materially the same. Certainly, there is no practical distinction between circulators collecting petition signatures for a Primary Election petition and a General Election petition. Indeed, any justification for a residency restriction for petition circulators could be more aptly applied to a Primary Election, where

> signers of a candidate petition are also restricted to registered voters of the political party of the Primary Election candidate. N.J.S.A. 19:23-11. The court in *Arsenault* definitively held that a residency requirement for Primary Election petition circulators "is unnecessarily restrictive and does not survive strict scrutiny." *Arsenault*, 539 F.Supp.3d at 348….As such, candidates seeking petition signatures to appear on the General Election ballot should not be burdened with greater restrictions than Primary Election candidates. Consistent with the *Arsenault* decision, out-of-state individuals must be permitted to act as petition circulators so as to not unconstitutionally violate their free speech by prohibiting the right of voters to choose from eligible candidates being placed on the General Election ballot.

Final Decision of Secretary Caldwell, OAL Docket No. STE-09209-26, at pp. 5-6.

42. This court's decision in *Arsenault* followed a long line of unbroken federal circuit and district courts decisions holding that blanket bans on out-of-state circulators for candidate and initiative and referendum petitions are not narrowly tailored to advance any alleged governmental interest.

43. States can more narrowly protect any interest by requiring out-of-state petition circulators to submit to the state's jurisdiction for the purpose of any investigation and/or prosecution of any alleged petition misconduct.

44. Since *Arsenault*, the New Jesey legislature has failed, for more than 5 years, to fix the constitutional infirmity evident in N.J.S.A. 19:13-7.

45. Since *Arsenault*, there have been no allegations of petition misconduct in the State of New Jersey evincing the utter nonsense that the ban on out-of-state petition circulators serves any, let alone a compelling governmental interest.

46. Secretary Caldwell's effort voluntarily cease enforcement of N.J.S.A. 19:13-7 was reversed by New Jersey state court's imposition of a stay of Secretary Caldwell's Final Decision in the challenge to Plainitff Leguia's 2026 nominating petition thereby reversing Secretary Caldwell's non-enforcement of N.J.S.A. 19:13-7 and striking Plaintiff Leguia's name from New Jersey's 2026 General Election ballot.

47. Voluntary cessation of an unconstitutional statute is an insufficient remedy and defense to a Section 1983 challenge. In fact, voluntary cessation of the enforcement of N.J.S.A. 19:13-7 failed in 2026 causing Plaintiff Leguia's name to be struck from New Jersey's 2026 General Election ballot for the Seventh Congressional District.

48. Accordingly, Plaintiff Leguia has suffered a concrete injury as a direct and proximate result of the challenged blanket ban found at N.J.S.A. 19:13-7.

49. Furthermore, Plaintiff Leguia will continue to suffer concrete injury as a direct and proximate result of N.J.S.A. 19:13-7 because she is not permitted to associate with out-of-state supporters to assist in her petition drive to appear as the Libertarian candidate on New Jersey's 2028 General Election ballot for the Seventh Congressional District.

50. Plaintiff Arsenault, in this action, suffers a concrete injury as a direct and proximate result of the challenged blanket ban found at N.J.S.A. 19:13-7 as he

is not permitted to circulate Plaintiff Leguia's 2028 nominating petition to appear as the Libertarian candidate on New Jersey's 2028 General Election ballot for the Seventh Congressional District.

51. Following *Arsenault*, the ban on out-of-state circulators for General Election candidates found at N.J.S.A. 19:13-7 while permitting Republican and Democrat political candidates to use out-of-state petition circulators for their Primary Election petitions imposes an unequal application of the laws of New Jersey in violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

52. As set forth above, the New Jersey Secretary of State has admitted that there is no functional difference between circulators of petitions for the Primary Election and circulators of petitions for the General Election.

53. Plaintiffs have no adequate remedy at law.

**COUNT I**
**(As-Applied First and Fourteenth Amendment Challenge to the Blanket Ban on Out-of-State Circulators of Nominating Petitions Imposed at N.J.S.A. 19:13-7)**

54. Plaintiffs reassert each preceding allegation as if set forth fully herein.

55. Defendant is a state actor charged with enforcement of N.J.S.A. 19:13-7.

56. The United States Supreme Court has established that the circulation of nominating petitions for political candidates to appear on an election ballot is

core political speech afforded the highest level of protection under the First and Fourteenth Amendments to the United States Constitution.

57. Signatures recorded on state nominating petitions for political candidates is core political speech protected under the First and Fourteenth Amendments to the United States Constitution.

58. The blanket ban on out-of-state petition circulators imposed at N.J.S.A. 19:13-7 imposes a severe burden on Plaintiffs' core political speech and is subject to strict scrutiny.

59. The blanket ban on the use of out-of-state petition circulators found at N.J.S.A. 19:13-7 is not narrowly tailored to advance a compelling governmental interest, as Plaintiff Arsenault's is willing to consent and submit himself to the jurisdiction of the State of New Jersey for the purpose of any investigation and/or prosecution of petition misconduct which more narrowly protects any alleged state interest advanced by Defendant in support of the challenged statute's blanket ban on the use of out-of-state petition circulators.

60. No state regulatory interest justifies the state residency requirement for the circulation of nominating petitions imposed on Plaintiffs at N.J.S.A. 19:13-7

61. Accordingly, N.J.S.A. 19:13-7, as applied to Plaintiffs, and all similarly situated New Jersey political candidates and out-of-state individuals

willing to submit to the jurisdiction of the State of New Jersey for the purpose of investigation and/or prosecution of alleged petition misconduct, is not narrowly tailored to advance a compelling governmental interest and is unconstitutional under the First and Fourteenth Amendments to the United States Constitution for which Plaintiffs demand relief.

## COUNT II
### (Equal Protection Clause Violation to the Blanket Ban on Out-of-State Circulators of Nominating Petitions Imposed at N.J.S.A. 19:13-7)

62. Plaintiffs reassert each preceding allegation as if set forth fully herein.

63. As a result of this Court's declaration in *Arsenault v. Way* that the blanket ban on the use of out-of-state petition circulators for Republican and Democratic nominating petitions at N.J.S.A. 19:23-11 was unconstitutional under the First and Fourteenth Amendments to the United States Constitution, the identical blanket ban imposed under N.J.S.A. 19:13-7 for other political candidates seeking access to the General Election ballot constitutes an unequal application of the laws of New Jersey.

64. There is no rational basis to classify out-of-state petition circulators assisting with the circulation of ballot access petitions for Libertarian and independent political candidates differently than petition circulators for Republican and Democratic candidates.

65. Out-of-State petition circulators are the same, no matter if they are circulating nominating petitions for Republican, Democratic, Libertarian or independent political candidates.

66. Accordingly, N.J.S.A. 19:13-7 impairs rights guaranteed to Plaintiffs under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution for which Plaintiffs demand relief.

## **REQUEST FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Court:

(1) Enter a declaratory judgment that N.J.S.A. 19:13-7 is unconstitutional under the First and Fourteenth Amendments to the United States Constitution to the extent it imposes a blanket ban on the use of out-of-state petition circulators willing to submit to the jurisdiction of New Jersey for the investigation and/or prosecution of petition misconduct;

(2) Enter a declaratory judgment that N.J.S.A. 19:13-7 is unconstitutional under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution to the extent it imposes a blanket ban on the use of out-of-state petition circulators willing to submit to the jurisdiction of New Jersey for the investigation and/or prosecution of petition misconduct;

(3) Permanently enjoin enforcement of N.J.S.A. 19:13-7 against Plaintiff Leguia and all similarly situated political candidates circulating nominating petitions to secure access to New Jersey's General Election Ballot;

(4) Permanently enjoin enforcement of N.J.S.A. 19:13-7 against Plaintiff Arsenault subject to his willingness to submit to the jurisdiction of New Jersey for any investigation and/or prosecution of alleged petition misconduct, and any similarly situated out-of-state individuals willing to submit to the jurisdiction of New Jersey for any investigation and/or prosecution of alleged petition misconduct as a condition precedent to lawful circulation of nominating petitions for New Jersey political candidates seeking direct access to New Jersey's General Election ballot;

(5) Order Defendant to incorporate text on nominating petitions to easily allow out-of-state petition circulators to submit to the jurisdiction of New Jersey for any investigation and/or prosecution of alleged petition misconduct as a condition precedent to lawful circulation of nominating petitions for New Jersey political candidates seeking direct access to New Jersey's General Election ballot;

(6) Award Plaintiffs the cost of this actin together with reasonable attorney fees and expenses pursuant to 42 U.S.C. § 1988; and,

(7) Award any other remedy that this Court deems proper and just.

Respectfully submitted.

Dated: October 2, 2026

/s/_Lawrence M. Otter_____
LAWRENCE M. OTTER, ESQUIRE
**ATTORNEY FOR PLAINTIFFS**
P.O. Box 575
Silverdale, PA 18962
267.261.2948
Email: larryotter@hotmail.com

/s/ Paul A. Rossi__________
Paul A. Rossi, Esq.
*Admission Pro Hac Vice*
*Admission/Application Forthcoming*
316 Hill Street
Suite 1020
Mountville, PA 17554
717.961.8978
Email: Paul-Rossi@comcast.net